Opinion issued April 30, 2026



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-24-00323-CV

————————————————

**ALI CHOUDHRI, Appellant**

**V.**

**GEORGE M. LEE, Appellee**

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2020-16175

## MEMORANDUM OPINION

The trial court rendered a final summary judgment in favor of George M. Lee on his claim for breach of guaranty, and the judgment implicitly rejected Ali Choudhri's counterclaim and affirmative defense based on release. On appeal, Choudhri challenges the summary judgment in four issues. In his first two issues, he

argues that the trial court erred by granting summary judgment because Lee did not properly authenticate his exhibits. In his last two issues, Choudhri argues that the trial court erred by granting summary judgment on his counterclaim and affirmative defense. We affirm.

## Background

Lee loaned Choudhri's company 1001 West Loop, LP nearly $2,700,000. As president, Choudhri executed a promissory note in July 2014 memorializing the loan. The note matured in July 2017. The terms of the note required monthly interest-only payments from November 2014 until the maturity date, when the principal became due. The note was secured in part by a guaranty. Choudhri executed the guaranty in his individual capacity and personally guaranteed payment of the note.

Choudhri made the monthly interest payments until December 2016. When he stopped paying on the note, he still owed $225,288 in unpaid interest and $2,681,830 in unpaid principal. Choudhri contends that Lee released him from his obligation under the guaranty in a May 2018 written agreement to settle claims concerning a separate, unrelated loan which the parties entered in 2013 and which was also in default. The release agreement does not mention the 2014 loan at issue here.

In 2020, Lee sued Choudhri for breach of guaranty. Lee alleged that Choudhri had defaulted on the loan payments and refused to make further payments. He sought

damages of over $4 million for the unpaid principal, unpaid interest payments, and interest due to the default. He also sought to recover attorney's fees.

Before filing an answer, Choudhri removed the case to federal bankruptcy court. He then successfully moved for a remand to state court for lack of subject-matter jurisdiction. Upon remand, Choudhri filed an original answer with a general denial. This answer did not raise any defense or counterclaim.

Lee then moved for traditional summary judgment. He primarily sought summary judgment on his sole claim for breach of guaranty. He submitted an unsworn declaration from his custodian of records, which stated the details of the 2014 loan and Choudhri's subsequent default, including the amounts of principal and interest still outstanding under the promissory note. With interest "compounding annually" on the defaulted amount, the total unpaid balance had grown to over $6 million. The declaration also attempted to authenticate the remaining summary judgment exhibits as business records. These exhibits included the note, the guaranty, a list of missed payments, and demand letters to Choudhri.

The motion also anticipated that Choudhri might assert release as a defense. It argued that while the case was removed, the bankruptcy court had ruled that the May 2018 settlement agreement covered only a separate loan which the parties

3

entered in 2013 and did not cover the 2014 loan. Lee attached several documents from various bankruptcy proceedings to support this argument.[1]

After Lee moved for summary judgment, Choudhri amended his answer to assert numerous affirmative defenses, including release,[2] and a counterclaim for breach of the release agreement.[3] He alleged that Lee signed the May 2018 settlement agreement, thereby "releasing [Lee's] claims against [Choudhri] and canceling the note underlying [Lee's] claim for breach of guaranty," and Lee breached the agreement by maintaining his action for breach of guaranty. Lee filed an answer denying the counterclaim and asserting res judicata and collateral estoppel as affirmative defenses. Lee alleged that the bankruptcy court had already ruled against Choudhri on the release issue.

Choudhri responded to the summary judgment motion. He did not dispute Lee's allegations concerning the defaulted 2014 loan. Rather, he argued that Lee "specifically released his claim against [Choudhri] by a signed writing": the May 2018 agreement. Choudhri attached this agreement to the response.

---

[1] The parties were simultaneously involved in multiple bankruptcy proceedings, including separate proceedings concerning the 2013 loan and the 2014 loan.

[2] On appeal, Choudhri relies only on the defense of release.

[3] Choudhri also asserted a counterclaim for declaratory judgment based on the release agreement. He does not challenge the summary judgment on this counterclaim.

Choudhri also objected to all Lee's summary judgment exhibits except an affidavit in support of attorney's fees. The objections primarily challenged the custodian's declaration. Choudhri argued that the declaration was "in places objectively false, and in others merely contradictory," because it stated that Lee's exhibits were business records created by the custodian. Choudhri disputed that the exhibits were business records and argued that they were not authenticated and were therefore inadmissible. Choudhri also objected that statements about the 2014 loan were conclusory. The trial court sustained the objections to four exhibits[4] and overruled the remaining objections.

Lee replied and argued that collateral estoppel barred Choudhri from relitigating the scope of the May 2018 settlement agreement and whether it operated as a release of Lee's claim.

The trial court signed a final summary judgment awarding Lee over $6 million in damages,[5] as well as attorney's fees and post-judgment interest. Choudhri filed a motion for new trial, which was overruled by operation of law. This appeal followed.

---

[4]     The four stricken exhibits are not pertinent to our decision in this appeal.

[5]     The damages award matched the amount requested in the declaration, which broke down the total into unpaid principal ($2,681,830); missed interest payments ($225,288); and interest on the unpaid amounts "compounding annually" since the maturity date.

5

## Summary Judgment

Choudhri challenges the summary judgment in four issues on appeal. His first two issues focus on the admission of Lee's summary judgment evidence. His remaining two issues focus on his counterclaim and affirmative defense of release.

### A.      Standard of Review

We review summary judgments de novo under a well-established standard. *See* TEX. R. CIV. P. 166a(c);[6] *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). The movant bears the burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Knott*, 128 S.W.3d at 215–16. In conducting our review, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 215.

We review evidentiary rulings for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex.

---

[6]      The supreme court recently amended Rule 166a, but the amendments apply only to a motion for summary judgment filed on or after March 1, 2026. Order Regarding Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). The summary judgment motion in this case was filed before the effective date of the amendments, so the pre-amendment version of Rule 166a applies in this appeal. All citations in this opinion to Rule 166a are to the version of the rule that existed prior to March 1, 2026.

2024) (per curiam) (quotation omitted). This standard of review reflects the deference traditionally afforded to a trial court's ruling to admit or exclude summary judgment evidence. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85 (Tex. 2018).

## B.    Evidentiary Rulings

In his first two issues, Choudhri challenges the trial court's admission of Lee's summary judgment evidence. He asserts that the "sole evidentiary basis" for summary judgment was the custodian's declaration which Lee used to authenticate the remaining evidence. Choudhri argues that the custodian is "undeniably" an "interested witness" who "lie[d] repeatedly" in the declaration, thereby invalidating the declaration and any attempt to authenticate the exhibits. He also challenges the admission of copies of the note and the guaranty. He further briefly challenges statements about the loan and default. There is significant overlap in the arguments in the first two issues, so we consider them together.

The declaration, which is central to these issues, states:

1.    My name is Robert Frank. . . . I am over 18 years of age and am legally competent to make this Unsworn Declaration. I have personal knowledge of the facts stated in this Unsworn Declaration and they are true and correct.

2.    I am currently the custodian of records and manager for Plaintiff's [Lee's] personal office, including the management of the records and collection of payment for the personal guarantee executed by Ali Choudhri ("Defendant") for the property located at 1001 West Loop South (the "West Loop Property"). As part of my job duties, I am responsible for Defendant's account with Plaintiff as related to the West Loop Property, and I am familiar

7

with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

3.     The Exhibits attached to Plaintiff's Motion for Summary Judgment are true and correct copies of those documents as they appear in Plaintiff's records. These are exact duplicates of the documents. It is the regular practice of Plaintiff to make these types of records at or near the time of each act, event, condition, opinion, or diagnosis set forth in the documents. It is the regular practice of Plaintiff for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them. It is the regular practice of Plaintiff to keep this type of record in the course of regularly conducted business activity. It is the regular practice of the business activity to make records.

4.     Plaintiff loaned Defendant, through his business, 1001 West Loop, L.P., a total of $2,700,00[0].00. Defendant thereafter made several payments on this loan from July 1, 2014 until December of 2016. Thereafter, Defendant ceased making payments, missing a total of seven payments due under the July 1, 2014 Promissory Note (the "Note") prior to the Note maturing in July of 2017. Defendant never paid the principal balance of the Note.

5.     On July 1, 2017, Defendant missed seven payments of interest of $32,184.00 each, totaling $225,288.00. The unpaid principal of the loan on July 1, 2017 was $2,681,830. Thus the total amount of principal and interest owing on July 1, 2017 on the Note was $2,907,118.00.

6.     Defendant has not made any further payments under the Note. Therefore, compounding annually over the course of 2,340 days, or approximately 6.4 years, the current total amount due and owing on the Note is $6,724,402.62.

Rule 166a provides that supporting affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). Moreover, "[a] summary judgment may be based

8

on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c). The parties do not dispute that Frank is an interested witness.

The declaration establishes that Frank had personal knowledge of and was competent to testify about the 2014 loan and its default. *See* TEX. R. CIV. P. 166a(f). The declaration identified Frank as the custodian of records and manager for Lee's personal office. Frank stated that his duties included "the management of the records and collection of payment for the personal guarantee executed by Ali Choudhri" which underlies this litigation. He also stated that he was "responsible for [Choudhri's] account with [Lee]" concerning the 2014 loan and that he was familiar with how the records were created and maintained. Finally, he stated that he has personal knowledge of these facts. Frank's familiarity with the creation, management, and maintenance of Lee's records underlying the 2014 loan shows he has personal knowledge of the note and guaranty and is competent to testify about the loan and its default. *See id.*

Moreover, paragraphs 2 and 4–7 establish the elements of Lee's breach of guaranty claim. *See Chahadeh v. Jacinto Med. Grp., P.A.*, 519 S.W.3d 242, 249 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (listing elements of breach of guaranty claim). The declaration states that Lee loaned $2,700,000 to Choudhri

"through his business," and the loan was secured by a promissory note and a "personal guarantee executed by" Choudhri. Choudhri made payments on the loan from July 2014 until December 2016, when he "ceased making payments." He "missed seven payments of interest" totaling $225,288, and the unpaid principal balance after the maturity date totaled $2,681,830. Additionally, interest compounded annually on the defaulted amounts. When the declaration was signed, Choudhri owed $6,724,402.62.

These statements establish the existence and ownership of a guaranty contract executed by Choudhri; the terms of the agreement for Choudhri to repay the loan; the nonpayment of the loan on which liability is based; and Choudhri's failure or refusal to repay the loan. *See id.* The statements are clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *See* TEX. R. CIV. P. 166a(c). The statements are also uncontroverted. *See id.* The trial court therefore could have based summary judgment on the uncontroverted declaration.

Choudhri argues that these statements contain inconsistencies. For example, while the declaration states that Lee loaned Choudhri "a total of $2,700,00[0].00," the promissory note contains a lesser principal amount of $2,681,830. But Lee's petition alleged that the original amount of the loan was $2,700,000, and the loan was "memorialized" in the promissory note "in the principal amount of $2,681,830"

plus interest. Lee only sought to recover the lesser amount reflected in the promissory note. Next, Choudhri quarrels with the statement that Lee loaned the money to "Defendant," and "Defendant" is not listed as the borrower under the note. But the declaration expressly identifies "Defendant" as Choudhri and states that he personally guaranteed the note. Finally, Choudhri asserts that "it appears that Mr. Lee approved the loan on behalf of the borrower" and cites the signature page of the guaranty. But this is not an inconsistency in the declaration itself.[7] We therefore disagree that the declaration contained inconsistencies about the loan and default.

Lee attached the promissory note and guaranty as summary judgment evidence. The note reflects that Lee loaned money to 1001 West Loop, LP, and it is dated July 1, 2014. The principal amount of the note was $2,681,830. 1001 West Loop agreed to pay monthly interest payments of $32,184 until the note matured in July 2017, at which time "all accrued and unpaid interest along with the principal balance will be payable in full." The note expressly references the guaranty "executed by Ali Choudhri as guarantor, which guarantees, as provided in the Guaranty, the payment of the Guaranteed Indebtedness as therein described." Choudhri signed the note as president of 1001 West Loop.

---

[7] Moreover, this argument mischaracterizes the signature page, which does not identify Lee as a borrower.

The guaranty identifies Choudhri as the guarantor of the Guaranteed Indebtedness, defined in part as "[t]he debt evidenced by the note dated July 1, 2014, in the original principal amount of $2,681,830[.]" Choudhri agreed "to pay, when due or declared due, the Guaranteed Indebtedness to [Lee] . . . ." Choudhri also agreed that the "guaranty is an absolute, irrevocable, unconditional, and continuing guaranty of payment and performance and not of collection." *See Chahadeh*, 519 S.W.3d at 246–47 (stating that law recognizes two distinct types of guaranty— guaranty of collection and guaranty of payment (or unconditional guaranty)—and latter "is an obligation to pay the debt when due if the debtor does not and requires no condition precedent to its enforcement against the guarantor other than a default by the principal debtor"). Choudhri signed the guaranty in his individual capacity.

Choudhri argues that the note and guaranty do not qualify as business records. Rule of Evidence 803(6) defines business records (or records of a regularly conducted activity) as follows:

> (6) ***Records of a Regularly Conducted Activity.*** A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted business activity;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit

> > or unsworn declaration that complies with Rule 902(10); and
>
> > (E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. "Business" as used in this paragraph includes every kind of regular organized activity whether conducted for profit or not.

TEX. R. EVID. 803(6).

Choudhri contends that Rule 803(6) applies and that the note and guaranty are not records of an act, event, condition, opinion, or diagnosis. We disagree. Both documents reflect the parties' acts of entering the two agreements. *See Act*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Something done or performed, esp. voluntarily; a deed."). As Lee points out, Choudhri did not file a verified denial contesting that he executed either the note or the guaranty, and therefore the instruments "shall be received in evidence as fully proved." *See* TEX. R. CIV. P. 93(7); *Boyd v. Diversified Fin. Sys.*, 1 S.W.3d 888, 891 (Tex. App.—Dallas 1999, no pet.) (holding that note and guaranty on which plaintiff's claims were based were admissible under Rule 93(7) "regardless of whether they qualified as an exception to the hearsay rule under [Rule] 803"); *see also Lissiak v. SW Loan OO, L.P.*, 499 S.W.3d 481, 494 (Tex. App.—Tyler 2016, no pet.) ("A Rule 93(7) verified denial challenges the authenticity of the document and addresses the document's admissibility as an evidentiary issue."); *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Tr. I*, 331 S.W.3d 500, 507 (Tex. App.—El Paso 2010, no pet.) (concluding that

defendant's failure to file verified denial of construction loan, mortgage note, and guaranty resulted in defendant "conclusively admit[ing] the validity of the instruments" and "waiv[ing] their evidentiary objections thereto").

Choudhri also contends that the guaranty attaches "several pages of what appears to be the records of another entity," and he disputes that these records are business records. Choudhri refers to a document entitled "Unanimous Written Consent in Lieu of Meeting of the Partners of 1001 West Loop, LP," which is part of the guaranty exhibit. This document ratified and approved the 2014 loan and the pledging of partnership property as security. But the document does not expressly reference either the note or the guaranty. This document has no bearing on whether the guaranty is admissible.

Choudhri also argues that the note and guaranty were not authenticated because they are copies and the declaration did not state that they were true and correct copies of the originals. Authentication is a condition precedent to the admissibility of evidence. *H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 621 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). To satisfy the authentication requirement, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a).

One method of authenticating documents is by submitting a business records affidavit. *See* TEX. R. EVID. 902(10). Business records accompanied by an affidavit

are "self-authenticating" and "require no extrinsic evidence of authenticity" to be admissible. *Id.* Rule 902(10) provides that the "original or a copy of a record" is admissible if it meets the requirements of Rule 803(6) and other requirements not relevant here. *Id.*

The rule sets out a form affidavit that "is sufficient" but "not exclusive." TEX. R. EVID. 902(10)(B). The relevant part of the form language states: "These are the original records or exact duplicates of the original records." *Id.* Texas courts, including this Court, have held that substantial compliance with the form language suffices. *E.g.*, *Houle v. Cap. One Bank (USA), N.A.*, 570 S.W.3d 364, 373 n.1 (Tex. App.—El Paso 2018, pet. denied); *Sanders v. State*, No. 01-17-00113-CR, 2018 WL 4129895, at * 5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, pet. ref'd) (mem. op., not designated for publication); *Taylor v. Discover Bank*, No. 03-17-00677-CV, 2018 WL 4016611, at *2–3 (Tex. App.—Austin Aug. 23, 2018, no pet.) (mem. op.) (concluding that business records affidavit which substantially complied with form language in Rule 902(10)(B) was sufficient).

Here, the declaration substantially complies with the form language in the Rule. As Choudhri correctly notes, the declaration did not state that any of the records were "original records or exact duplicates of original records." *See* TEX. R. EVID. 902(10)(B). Rather, it stated that the exhibits "are true and correct copies of those *documents* as they appear in [Lee's] records. These are exact duplicates of the

15

*documents*." (Emphasis added.) But this deviation does not destroy the authentication attempt.

Texas courts have found that business records affidavits substantially complied with Rule 902(10)(B) and were therefore admissible where the affidavit stated that attachments were true and correct copies of documents. *Petty v. Citibank (S.D.) N.A.*, 218 S.W.3d 242, 245 (Tex. App.—Eastland 2007, no pet.); *Capers v. Citibank (S.D.), N.A.*, No. 05-05-01230-CV, 2006 WL 3020419, at *3 (Tex. App.—Dallas Oct. 25, 2006, no pet.) (mem. op.). We discern no meaningful difference in the language of the rule ("These are the original records or exact duplicates of the original records.") and the statement that the records were "true and correct copies" and "exact duplicates" of "documents" as they appear in Lee's files. *See* TEX. R. EVID. 902(10)(B). We conclude that the declaration substantially complies with the non-exclusive form language in Rule 902(10)(B). *See Boyd*, 1 S.W.3d at 891 (holding that note and guaranty were admissible "regardless" of any exception to hearsay rule because defendant had not denied execution of documents under Rule 93(7) and plaintiff's witness testified that proffered documents were true and exact copies of originals).

Rule 902(10) authorizes trial courts to admit a copy of a business record that complies with Rule 803(6) and is accompanied by a business records affidavit. *See* TEX. R. EVID. 902(10). Because both requirements are met here, we conclude that

16

the trial court did not abuse its discretion by admitting the note and guaranty. Even if the other exhibits were not properly authenticated, the uncontroverted declaration, note, and guaranty conclusively established the elements of Lee's breach of guaranty claim.

We overrule Choudhri's first two issues.

## C.     Choudhri's Affirmative Defense and Counterclaim

Choudhri focuses his remaining two issues on release, which he asserted as an affirmative defense and as the basis of his counterclaim for breach of the May 2018 agreement. He contends that Lee did not move for summary judgment or present any evidence refuting the counterclaim and defense. Alternatively, he contends that the release defeats Lee's claim for breach of guaranty. Because Choudhri briefs these two issues together, we consider them together.

### 1.     Lee moved for summary judgment on release

Choudhri first argues that Lee did not move for summary judgment on the counterclaim.[8] We disagree.

Generally, if a defendant does not amend or supplement his summary judgment motion to address claims asserted in a plaintiff's amended pleading, the

---

[8]     To the extent Choudhri argues that Lee did not move for summary judgment on the affirmative defense of release, Lee was not required to do so to meet his summary judgment burden. *See Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("A plaintiff, when moving for summary judgment, is not under any obligation to negate affirmative defenses.").

17

defendant is not entitled to summary judgment on the plaintiff's entire case. *Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Summary judgment is improper in these circumstances because the judgment grants more relief than requested. *Id.*

But if a summary judgment motion directed at an earlier-filed petition is sufficiently broad to encompass later-filed claims, the motion need not be amended to effectively challenge the claims in a later-filed petition. *Allender v. Katy Chamber of Com.*, No. 01-12-00430-CV, 2013 WL 3464783, at *3 (Tex. App.—Houston [1st Dist.] July 9, 2013, no pet.) (mem. op.) (quoting *Espeche v. Ritzell*, 123 S.W.3d 657, 664 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)); *Rotating Servs.*, 245 S.W.3d at 487; *accord Young v. Dwayne R. Day, P.C.*, No. 01-16-00325-CV, 2018 WL 1473931, at *4–5 (Tex. App.—Houston [1st Dist.] Mar. 27, 2018, pet. denied) (mem. op. on reh'g) ("[S]ummary judgment may be proper when the original motion is broad enough to encompass the newly asserted claims."); *Khan v. Hasan*, No. 01-07-00082-CV, 2008 WL 598148, at *4 n.2 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.). The failure to amend a summary judgment motion after the opposing party amends its petition to add new claims does not necessarily deprive a trial court from granting summary judgment on the new claims: "In a nod to reality, summary judgment may be properly granted on later-pleaded causes of action if the grounds actually asserted show that the plaintiff could not recover on

18

the later-pleaded cause of action." *Am. Zurich Ins. Co. v. Barker Roofing, L.P.*, 387 S.W.3d 54, 67 (Tex. App.—Amarillo 2012, no pet.) (quoting *Owens v. McLeroy, Litzler, Rutherford, Bauer & Friday, P.C.*, 235 S.W.3d 388, 391 (Tex. App.—Texarkana 2007, no pet.)).

When Lee moved for summary judgment, Choudhri had not yet pleaded any affirmative defenses or counterclaims. Nevertheless, the motion anticipated that Choudhri might raise the issue of release as he had done in the bankruptcy proceeding. It asserted that Choudhri was not released from his obligation under the 2014 loan, and the bankruptcy court's ruling on the issue barred Choudhri from raising it again in state court. Therefore, the motion was sufficiently broad to encompass Choudhri's later-filed counterclaim.

### 2. The May 2018 agreement did not release Lee's claim for breach of guaranty

The parties first dispute whether Choudhri's counterclaim is barred by res judicata or collateral estoppel. Assuming without deciding the counterclaim was not barred, we conclude that the May 2018 agreement does not release Lee's claim for breach of guaranty.

Choudhri argues that the May 2018 agreement was broad enough to release Lee's claim for breach of guaranty. Choudhri attached a copy of the agreement to his summary judgment response.

19

A release is a written instrument that immediately discharges a duty or obligation owed to one party on the occurrence of a condition. *Katy Int'l, Inc. v. Jiang*, 451 S.W.3d 74, 88 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) (stating that release "surrenders legal rights or obligations between the parties to an agreement," "operates to extinguish the claim or cause of action," and "is an absolute bar to any right of action on the released matter"). We construe a release like any other agreement by applying ordinary rules of contract interpretation. *Katy Int'l*, 451 S.W.3d at 88. The parties' chosen language is given its plain meaning. *Id.* We construe the instrument as a whole "rather than by isolating a certain phrase, sentence, or section of the agreement." *Id.*

The parties' oral statements regarding their intentions may not vary or contradict the terms of an agreement. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (op. on reh'g). Courts construe a release by considering how a reasonable person would have used and understood its language, considering the circumstances surrounding its negotiation and the purposes which the parties intended to accomplish by entering the contract. *Id.*

To effectively release a claim, the releasing instrument must "mention" the claim to be released. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d

20

692, 697–98 (Tex. 2000); *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). "Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged." *Brady*, 811 S.W.2d at 938. The parties need not, however, anticipate and identify every potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate*, 20 S.W.3d at 698. Although releases generally encompass claims existing at the time of execution, a valid release may cover unknown claims that later develop. *Id.* But "general categorical release clauses are narrowly construed." *Brady*, 811 S.W.2d at 938.

Lee executed the release agreement in May 2018. It states that the parties executed a promissory note in December 2013 for $20 million "covering certain real property" described in an attached exhibit. The loan was in default, which resulted in litigation between Lee and Choudhri in a separate suit. Pertinent to the release paragraph discussed below, the agreement defines "Loan Documents" as a December 2013 deed of trust, UCC financial statements, and "all other documents evidencing or securing the Loan" entered in December 2013. The release agreement does not mention the 2014 loan underlying this appeal.

The release language is contained in paragraph 27, which states:

> 27. **Ratification; Release of Lender.** Record Owner [Briar Building Houston, LLC] hereby ratifies, reaffirms, acknowledges, and agrees that the Loan Documents represent valid, enforceable and collectible obligations of Borrower [50 Briar Hollow LLC] and

21

Guarantor [undefined] and that The Lee Parties [defined to include Lee] have no knowledge of any offsets, defenses or claims against Lender [BDFI LLC], or any of its subsidiaries, affiliates, [etc.] whether asserted or unasserted, and neither of The Lee Parties will assert any claims for offset or otherwise assert any claims or defenses to the payment of the obligations under the Loan Documents. To the extent that such offsets, defenses or claims may exist, The Lee Parties . . . release and forever discharge and release Lender, its subsidiaries, affiliates, [etc.], including . . . Ali Choudhri [one of the "Lender Affiliates"] of and from any and all manner of actions, causes of action, suits, debts, controversies, damages, judgments, executions, claims and demands whatsoever, asserted or unasserted, in law or in equity, which Releasors ever had or now have against Lender and/or Lender Affiliates, including, without limitation, any presently existing claim or defense whether or not presently suspected, contemplated or anticipated. . . .

Choudhri argues that this paragraph released all claims Lee had against him because it used "broad-form language" and did not preserve any claims. We disagree.

The release paragraph is comprised of two sentences, and Choudhri relies only on the second sentence to support his argument. However, courts construe written instruments as a whole rather than by isolating certain sentences. *Katy Int'l*, 451 S.W.3d at 88. Reading these two sentences together, the release paragraph unambiguously applies only to the 2013 loan described as "Loan Documents."

The first sentence acknowledges the validity of the Loan Documents concerning the 2013 loan and states that Lee has "no knowledge of any offsets, defenses or claims" against the lender or its affiliates, including Choudhri. The sentence continues by stating that Lee will not "assert any claims for offset or

22

otherwise assert any claims or defenses to the payment of the obligations under the Loan Documents" comprising the 2013 loan.

The second sentence then provides that, "*[t]o the extent that such offsets, defenses or claims may exist*," Lee releases Choudhri from any and all claims whatsoever. (Emphasis added.) This emphasized language ties the second sentence to the first sentence and limits the release to "any claims for offset or . . . any claims or defenses to the payment of the obligations under the Loan Documents" concerning the 2013 loan. *See id.*; *see also Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 471 (Tex. 2022) ("We must presume the parties intended that these words bear a particular significance and meaning.") (quotation omitted).

Moreover, the release paragraph states that Lee had "no knowledge of any . . . claims against Lender" or its affiliates, including Choudhri. But when the release was executed in May 2018, Lee did have knowledge of a claim against Choudhri concerning the 2014 loan because Choudhri had been in default since the note matured in July 2017. *See Baty*, 63 S.W.3d at 850 & n.7 ("While including contractual language that expressly reserves or excepts claims intended to be preserved from the effects of a release may be prudent practice to avoid the time and expense of litigating the issue, Texas law imposes no such requirement."). Because Lee had knowledge of a claim relating to the 2014 loan, the release language is inconsistent with Choudhri's contention that the release covered the 2014 loan.

Finally, the release agreement does not mention the 2014 loan underlying the breach of guaranty claim. *See Keck, Mahin & Cate*, 20 S.W.3d at 697–98 (stating that releasing instrument must "mention" claim to effectively release it). The only claim mentioned in the release agreement concerns the December 2013 loan for $20 million. This loan is separate from the 2014 loan for $2,700,000. While a release need not identify every potential claim relating to the subject matter of the release, "any claims not clearly within the subject matter of the release are not discharged." *Brady*, 811 S.W.2d at 938.

The release agreement here is analogous to the one in *Victoria Bank and Trust Co. v. Brady*. There, a bank loaned money to a cattle company to fund a new cattle venture. *Id.* at 933. The loan was secured by a promissory note and a guaranty from the cattle company's president. *Id.* at 933 & n.1. In a separate transaction, the bank extended a line of credit to the cattle company. *Id.* at 933. Litigation eventually ensued over the loan agreement, but the parties settled these claims in an agreement releasing the bank "from any and all claims and causes of action . . . directly or indirectly attributable to the above described loan transaction." *Id.* at 934, 938. Later, separate litigation arose out of the bank's security interest under the line of credit, and the bank argued that the settlement agreement had released it from these claims as well. *Id.* at 934–35, 939. The supreme court disagreed.

The settlement agreement released the bank from claims concerning the "above described loan transaction," which referred only to the loan secured by the note. *Id.* at 938–39. But in the second lawsuit, all the cattle company's claims and causes of action arose directly from the security interest under the line of credit, which was "not mentioned or clearly within the subject matter" of the settlement agreement. *Id.* at 939. The court held that the settlement agreement did not release the bank from the claims arising out of the line of credit. *Id.*

Here, the subject matter of the May 2018 agreement is limited to the December 2013 loan. Lee released Choudhri from any and all claims whatsoever only "[t]o the extent that such offsets, defenses or claims may exist" regarding the 2013 loan. The 2014 loan, on the other hand, is neither mentioned in nor clearly within the subject matter of the release. Accordingly, we conclude that the May 2018 agreement did not release Choudhri from his obligation to repay the 2014 loan.

Choudhri relies on *Transcor Astra* to argue that a general release of any and all claims whatsoever without preserving any claims serves to release all claims between the parties to the release. In that case, two petroleum companies entered an agreement in 2006 before the relationship soured. 650 S.W.3d at 468. Numerous lawsuits arose out of this agreement before the parties entered a settlement agreement in 2012. *Id.* The 2012 agreement contained a mutual release of "any and all claims, demands, and causes of action of whatever kind or character, which

25

the . . . Parties have, or may have in the future, based on any acts or omissions, whether known or unknown, that have occurred on or before" the effective date of the agreement. *Id.* at 470. The agreement further stated that the release should be "construed as the broadest type of general release" and included "without limitation" all claims connected to the pending disputes, all claims related to the 2006 agreement, all claims "growing out of, or connected in any way with" the parties' dealings, and all claims based on activities alleged to violate any law. *Id.*

Choudhri relies on a portion of the opinion considering whether an arbitration provision in the 2006 agreement continued to exist after execution of the 2012 settlement agreement. *See id.* at 480–81. The parties disputed whether this threshold question should be decided by the arbitrator or by the courts. *Id.* at 480. Although the 2006 agreement "indisputably includes a clear and unmistakable agreement" for the arbitrator to decide questions of the validity of the arbitration provision, "the 2012 settlement agreement just as clearly confirms that the parties later agreed to resolve all claims and to supersede the [2006] agreement." *Id.* at 481.

The court analyzed several provisions of the 2012 agreement which confirmed this conclusion. *Id.* In the 2012 agreement, the parties agreed to mutually release "all claims, demands, and causes of action of whatever kind or character" including "any claim arising out of or related to the 2006 [agreement], including without limitation, any claims related to [any] covenants." *Id.* The court found "no language" in the

2012 agreement "that could be interpreted to preserve any claims regarding the [2006] agreement or its arbitration clause." *Id.* The court concluded that the 2012 settlement agreement established the parties' agreement to supersede all prior agreements and resolve disputes over the 2012 agreement in court. *Id.*

The release agreement in *Transcor Astra* is broader than the one here and is therefore distinguishable. Here, the release is expressly limited to any and all claims whatsoever "[t]o the extent that such offsets, defenses or claims may exist" regarding the 2013 loan. Nothing in this release indicates that it should be "construed as the broadest type of general release" including "without limitation" any dispute that has ever arisen or will ever arise between the parties. *See id.* at 470. Moreover, Lee was not required to expressly preserve claims concerning the 2014 loan when such claims were not mentioned in the May 2018 agreement or within its subject matter. *See Baty*, 63 S.W.3d at 850 & n.7 (stating that Texas law does not require parties to include contractual language expressly reserving or excepting claims intended to be preserved from effects of release).

Choudhri also cites several cases to support his argument that the release is a general release broadly covering all claims Lee might have against him. Most of the cited cases stand for the proposition that a release agreement referencing contractual

claims might encompass tort claims not expressly mentioned in the agreement.[9]

Under this authority, the release agreement might have released Choudhri from related tort claims, such as a claim that he fraudulently induced Lee into the December 2013 loan. But it does not release claims wholly outside the subject matter of the release agreement, such as claims concerning the 2014 loan at issue in this appeal.[10] *See Keck, Mahin & Cate*, 20 S.W.3d at 698; *Brady*, 811 S.W.2d at 938.

We conclude that the May 2018 agreement did not release Choudhri from his obligation to repay the 2014 loan pursuant to the guaranty. We therefore hold that

---

[9] *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 180 (Tex. 1997) (holding that release of all "causes of action of whatsoever nature" and unequivocal disclaimer of reliance on other party's representations clearly expressed parties' intent to preclude fraudulent inducement claims concerning subject matter of release agreement); *Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434–35 (Tex. 1997) (per curiam) (holding that release "from any and all claims . . . and causes of action of any kind whatsoever" relating to employee's relationship with employer covered claims of personal injury against employer for exposure to toxic sterilizing agent used during employment); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 855 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (op. on reh'g) ("Had the parties intended to release claims sounding in tort as well as claims sounding in contract, they easily could have included language to that effect in the settlement agreement or entered into a broad form general release encompassing 'claims of any nature whatsoever.'"); *Vela v. N. Star Dodge Sales, Inc.*, 989 S.W.2d 13, 18 (Tex. App.—San Antonio 1998, no pet.) (holding that release from "any and all liability regarding the purchase" of vehicle encompassed claims of unlawful debt collection, conversion, and wrongful repossession claims related to vehicle purchase).

[10] Choudhri also relies on a transcript from a bankruptcy hearing, arguing that Lee testified he knew and understood the terms of the release and agreed it was a general release. But a party's interpretation of a written contract cannot alter its unambiguous terms. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764–65 (Tex. 2018) ("Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument.") (quotation omitted).

the trial court did not err by granting summary judgment against Choudhri on the counterclaim.

We overrule Choudhri's third and fourth issues.

## Conclusion

We affirm the trial court's judgment.


David Gunn
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.